No. 46,836

STATE OF KANSAS, *Appellee*, v. HERBERT CORNELIUS FAGAN, *Appellant*.

(518 P. 2d 552)

Opinion filed January 26, 1973.

*Kermit M. Beal*, of Lawrence, argued the cause, and *Gary E. Krause*, also of Lawrence, was with him on the brief for the appellant.

*David Berkowitz*, county attorney, argued the cause, and *Vern Miller*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, Herbert Cornelius Fagan, was convicted of aggravated burglary and aggravated robbery. He was given consecutive sentences and has appealed. He contends the trial court erred in two particulars: First, in admitting certain items of physical evidence and second, in overruling his motion for discharge.

Before examining the points raised, we pause to relate the circumstances surrounding the crimes. At about 11 p. m., January 6, 1972, three men, at least two of whom were armed, forcibly broke in to the Lawrence residence of the Sterling family. Two of the men kicked in the front door and the third came through the back door, in which the glass had been broken. Present in the

house at that time were Catherine (Cathy) Sterling, her brother Robbie and three of their young friends, William Byrnes, Jerry Frahm and John Morrow. Cathy ran into the bathroom where she climbed through an unlocked window and ran to the home of a neighbor who alerted the police.

After entering the Sterling home, the bandits shot and killed a great Dane dog, and forced the young men to lie on the floor. Byrnes was struck on the head and forehead, receiving injuries which required seven stitches. He was also robbed of from fifteen to twenty-five dollars. Frahm was confronted by one of the gang, whom he thought was possibly this defendant, who struck him about the head and in the side with a shotgun, leaving him with abrasions and a cracked rib. Frahm was also relieved of the money carried in his wallet. Morrow was handcuffed, received a knot on his head, and was told by the robbers that they were taking him with them. What happened to Robbie is not revealed by the record.

When the Lawrence police arrived on the scene they observed a man standing on the curb in front of the Sterling home who broke and ran at the officers' approach. One of the police officers pursued the fleeing man across and into the corner of a parking lot at Naismith Hall where he collared him. On being captured the man turned out to be Mr. Fagan, this defendant, who gave a phony name and said, untruthfully, that he was a student at Kansas University. An aerosol cannister of Chemical Mace and a flare type pen gun, both ready to fire, were taken from Fagan, along with a buck knife identified as being identical to the knife belonging to Byrnes which had been lying on a table in the Sterling home and turned up missing after the robbery.

The defendant contends that the cannister of Mace and the flare type gun were erroneously admitted in evidence, and this constitutes his first allegation of error. He argues that neither the Mace nor the gun were shown to have been used in committing the crimes, that they were without probative value and were irrelevant and prejudicial, withal. The trial court admitted the two exhibits into evidence as being relevant to the circumstances of the arrest and to show intent.

We believe the trial court was correct in ruling that both items were admissible. Being found in the possession of the defendant at the time he was taken into custody, the articles were part of the total circumstances surrounding his presence near the scene of the

crimes and the same would be pertinent, in our opinion, as tending to explain or throw light on his actions at the time of the arrest and the purpose of his being in the vicinity. The rule is, generally, that evidence of the attending circumstances at the time an accused is arrested, including articles of property which are found in his possession, is relevant and admissible where the circumstances logically tend to connect the accused with the crime charged. (22A C. J. S., Criminal Law, § 628, pp. 472, 473.)

Although there is nothing in the record to suggest that either the Mace or the pen gun was actually used in the robbery, there is testimony that the gun could be adapted to fire a nine millimeter shell; that the Chemical Mace could immobilize a person at a thirty-foot distance; and that the cannister of Mace and the pen flare gun were ready to fire when taken from the defendant. Fagan's possession of these potentially dangerous devices in full operating condition we feel may safely be said to bear on the question of his intent, purpose and state of mind. (See *State v. Jones*, 202 Kan. 31, 446 P. 2d 851; *State v. Williams*, 196 Kan. 628, 413 P. 2d 1006.)

Evidence of the defendant's possession of an operable flare gun using nine millimeter ammunition would also appear to have relevance, although perhaps somewhat minimal, on the issue of identification. The record contains evidence that nine millimeter shells were found in the possession of Fred Quinn, a friend of Fagan's, at the time Quinn was apprehended in flight from the Sterling residence.

This court has frequently dealt with questions pertaining to relevance. In the case of *In re Estate of Isom*, 193 Kan. 357, 394 P. 2d 21, problems arising over relevance were discussed and it was held:

"For evidence to be admissible in the trial of a case it must be confined to the issues, but it need not bear directly upon them. To render evidence of collateral facts competent, there must be some natural, necessary or logical connection between them and the inference or result which they are designed to establish." (Syl. ¶ 2.)

The legislature has also given the matter some attention and in K. S. A. 1972 Supp. 60-401 it voiced these definitions:

"(a) 'Evidence' is the means from which inferences may be drawn as a basis of proof in duly constituted judicial or fact-finding tribunals, and includes testimony in the form of opinion, and hearsay.

"(b) 'Relevant evidence' means evidence having any tendency in reason to prove any material fact."

On the same general subject, see, also, *State v. Gauger*, 200 Kan. 563, 565, 438 P. 2d 463; *State v. Williams*, supra; *State v. Roth*, 207 Kan. 691, 697, 486 P. 2d 1385.

The fact that Fagan had the Mace and the flare gun on his person at the time of his arrest was a circumstance which the jury might consider as bearing on the question of whether his presence near the scene of the crimes was a casual, innocent and undesigned coincidence or whether it had a causal relationship to the criminal activities which were charged against him.

We have already touched on a good deal of the evidence refuting Fagan's contention that his motion for discharge should have been sustained, and little more need be added. However, we should mention two other telling pieces of testimony. First, when the defendant was taken into custody he twice said that his brothers had made him go into the house. Second, while being held in jail he told one cell mate that he couldn't shoot Cathy when he had an opportunity as she came out the window and he was overheard to urge a second cell mate, Danny Copp, to ask Cathy, an acquaintance of Copp's, not to press charges. This testimony gives added weight to the incriminating web of circumstances woven by the other evidence, physical and otherwise. Although Fagan asserts that there was no basis in the evidence for a reasonable inference of guilt, we find no merit in such a suggestion.

We find no prejudicial error in the record and the judgment of the trial court must be affirmed.

It is so ordered.