No. 47,430

STATE OF KANSAS, *Appellee,* v. FREDERICK B. COLLINS a/k/a FRED
CULLINS a/k/a RICHARD CULLINS, *Appellant.*

(528 P. 2d 1221)

Opinion filed December 7, 1974.

*George E. Grist,* of Grist & Bush, of Wichita, argued the cause, and *R. R. McEnulty,* of Fugate, Maben & McEnulty, of Wichita, was with him on the brief for the appellant.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Vern Miller,* attorney general, *Keith Sanborn,* district attorney, *Clifford L. Bertholf,* assistant district attorney, and *Steve Robison,* legal intern, were on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal from a conviction of aggravated robbery in violation of K. S. A. 1973 Supp. 21-3427. Following a jury trial, defendant-appellant was sentenced under the habitual criminal statute, K. S. A. 1973 Supp. 21-4504 (2), to a term of forty-five years to life. Defendant alleges various trial errors, and attacks the validity of the sentence imposed.

Defendant Fred Collins was charged with having committed armed robbery of a Dillon's Food Store in Wichita, Kansas, on April 18, 1972. Robert Richardson, the assistant manager of Dillon's, testified that on the night of the robbery he was forced at gunpoint to hand over all the money in the cash registers. While in the process of removing money from the registers defendant was also seen by a checker, June Armstrong. Both Richardson and Miss

Armstrong testified that they were quite close to defendant during the robbery, and at his trial they were able to positively identify defendant as the culprit.

Defendant contends the evidence, considered as a whole, was insufficient to establish guilt beyond a reasonable doubt. As the state correctly points out, however, the issue on appeal in a criminal case is not whether the evidence establishes guilt beyond a reasonable doubt, but whether there is sufficient evidence to form a basis for a reasonable inference of guilt when viewed in a light most favorable to the state. (*State v. Platz*, 214 Kan. 74, Syl. ¶ 1, 519 P. 2d 1097.)

Defendant concedes there is no question the crime was committed; the only issue is whether defendant was the perpetrator. There were two eyewitnesses to the robbery, both of whom positively identified defendant as being the gunman. Moreover, Miss Armstrong picked out defendant's picture at the police station from at least one hundred others. Considering the record as a whole, we conclude the evidence is sufficient to satisfy a reasonable inference of guilt.

The next issue raised by defendant concerns the effect of a misstatement by a juror on *voir dire*. While questioning the prospective jurors the county attorney asked if any of them had any relatives in law enforcement and all of them indicated they did not; however, after defendant had exercised all his peremptory challenges and the jury had been sworn in, one of the jurors selected advised the court that her son-in-law had just taken a position with the Sedgwick County sheriff's office, and it had slipped her mind. At that time, defendant's counsel remarked that had he known of this he would have peremptorily challenged the juror, but he made no objection or motion for a mistrial until after the state rested its case. In denying defendant's subsequent motion for a mistrial the court stated that the juror had answered satisfactorily all questions asked by defendant on *voir dire*, and the mere fact her son-in-law had worked for the sheriff's office was not ground for a challenge for cause.

Defendant also argues the presence of this juror prevented him from having a fair and impartial jury, and constitutes reversible error. Under K. S. A. 1973 Supp. 22-3423 the trial court "may" order a mistrial if false statements of a juror on *voir dire* prevent a fair trial. The determination is left to the discretion of the trial court and failure to grant a mistrial due to misstatements of a juror on *voir dire* will not constitute reversible error unless an abuse of dis-

cretion is shown. In the instant case, there has been no evidence offered to show the inclusion of this juror prevented a fair trial, other than the general allegation by defendant. The trial court questioned the juror as to any possible prejudice resulting from her omission and determined the presence of this juror would not prevent a fair trial. In the absence of any evidence to the contrary we cannot say the trial court erred.

Defendant's principal argument on appeal concerns the validity of the sentence imposed by the court. Initially, defendant contends the trial court had no authority to sentence defendant to any term since the statutes under which the court charged and sentenced him were improperly cited. Apparently, the trial court inadvertently referred to the statutes without the "Supp." preface. This point is dealt with in K. S. A. 1973 Supp. 22-3201 (2), which states that error in citation shall not be ground for reversal if the error did not prejudice the defendant. Defendant does not claim he was unaware of the nature of the charge against him, or of the sentence imposed, and no prejudice appears to have resulted from the omission.

In conjunction with the argument as to the general invalidity of the sentencing procedure, defendant claims the trial court erred in failing to follow the statutory sentencing guidelines set forth in K. S. A. 1973 Supp. 21-4601, *et seq.* K. S. A. 1973 Supp. 21-4606 (2) sets forth various factors which the trial court "shall" consider in fixing the minimum term of imprisonment. Specifically, the trial court should take into consideration defendant's history of prior criminal activity, the extent of harm, whether defendant intended to cause serious harm, whether there was any excuse or justification, whether the victim induced or facilitated commission of the crime, and whether the victim was compensated for the injury. It is apparent from the record that the trial court concluded it had sufficient information on these criteria to arrive at a proper sentence. We must presume the trial court followed the statutory directive and considered each of the factors enumerated therein. It should be noted that while K. S. A. 1973 Supp. 21-4604 fails to make a presentence report and investigation mandatory, we consider such procedures to be advisable. In the absence of a showing to the contrary, we find no error in the trial court's sentencing procedure.

Defendant next attacks the sentence imposed under the habitual criminal statute (K. S. A. 1973 Supp. 21-4504), as denying him

equal protection of the law. While defendant does not question the constitutionality of the habitual criminal statute, he claims the arbitrary application of the statute renders it unconstitutional under the Fourteenth Amendment to the United States Constitution. Specifically, defendant argues the lack of legislative guidelines in imposing the act, and the discretion vested with county attorneys in moving for its imposition, denies equal protection of the law.

The habitual criminal statute states in part: "Every person convicted a second or more time of a felony, . . . upon motion of the prosecuting attorney, may be by the trial judge sentenced to an increased punishment. . . ." The tone of the language in this statute is clearly permissive and it rests considerable discretion with the trial court and the county attorney in its imposition. Presumably, the legislature determined it to be more desirable to make such a statute discretionary in its application rather than opting for the harshness of mandatory penalties. The rule consistently followed by this court is that the exercise of prosecutorial discretion without a showing of discrimination by reason of willful, arbitrary, designed, deliberate, intentional or concerted action, does not deprive one of due process or equal protection of the law guaranteed by the Fourteenth Amendment in a case where an enhanced penalty was imposed under the act. (*Scoggins v. State*, 203 Kan. 489, 454 P. 2d 550; *Gladen v. State*, 196 Kan. 586, 413 P. 2d 124.) The United States Supreme Court considered the effect of state habitual criminal statutes and in the landmark case of *Oyler v. Boles*, 368 U. S. 448, 7 L. Ed. 2d 446, 82 S. Ct. 501, it said:

". . . [T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. . . ." (p. 456.)

Applying these rules to the case before us we cannot say that an arbitrary and capricious pattern of discrimination has been established to the prejudice of this defendant. Although defendant alleges the act is misused in plea bargaining and otherwise arbitrarily invoked, he offers no evidence in support of those claims. There has been no showing of bad faith or intentional misconduct on the part of either the county attorney or the sentencing judge. Accordingly, we find no equal protection violation in the application of the habitual criminal statute to this defendant.

Defendant's final argument is that the sentence adjudged con-

stitutes cruel and unusual punishment in violation of the Eighth Amendment. In essence, he claims a sentence of forty-five years to life was excessive in light of his past criminal conduct and his age at the time. The record reveals that defendant was convicted of an aggravated offense while he was still on parole. He already had two prior felony convictions for burglary and larceny and the trial court chose to invoke the provisions of the habitual criminal statute upon conviction of this, his third felony. This court has had many opportunities to consider the question of whether a sentence constitutes cruel and unusual punishment. In our earlier cases, we consistently held that cruel and unusual punishment related only to the kind of punishment to be inflicted and not to its duration. (*State v. White,* 44 Kan. 514, 25 Pac. 33.) In *State v. Coutcher,* 198 Kan. 282, 424 P. 2d 865, however, we recognized the Eighth Amendment may also be invoked against excessively and disproportionately long prison sentences. While we adhere to the rule as set forth in *State v. Coutcher,* supra, the sentence imposed in the present case was not so disproportionate to the offense as to constitute cruel and unusual punishment. The increased punishment for a second and third felony conviction, as provided by the habitual criminal statute, is imposed as a disciplinary measure, and it has long been settled that these statutes in themselves do not inflict cruel and unusual punishment. (*State v. Ricks,* 173 Kan. 660, 250 P. 2d 773; *Cipolla v. State,* 207 Kan. 822, 486 P. 2d 1391.)

The judgment is affirmed.

FONTRON, J., not participating.

PRAGER, J., dissenting: I respectfully dissent from that portion of the syllabus and opinion which approves the sentencing procedure and the ultimate sentence which was imposed in this case. In my judgment under the facts disclosed in the record here a minimum sentence of 45 years imposed on this 22-year-old man constituted an abuse of discretion in the absence of clear evidence to justify such a sentence. What concerns me about this case and many other cases which have come before this court is the wide disparity of sentences imposed by the district courts for comparable offenses. A number of the district courts of this state consistently refuse to require comprehensive presentence reports before imposing long prison terms. As in the present case some of the district courts refuse to obtain a report from the Kansas Reception and Diagnostic

Center as a guide for final sentencing. There has thus developed in this state in some judicial districts a pattern of sentencing by whim and caprice rather than a sentencing procedure based upon a penetrating investigation into the backgrounds of persons found guilty of crime. The legislative policy in this state in the area of sentencing has been stated by the legislature in K. S. A. 1973 Supp. 21-4601. There the legislature has stated categorically that the provisions pertaining to sentencing are to be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities as revealed by case studies. In K. S. A. 1973 Supp. 21-4606 the legislature has established criteria for fixing minimum terms. There the legislature has stated that in sentencing a person to prison the court shall fix the lowest minimum term which in the opinion of the court is in accordance with the public safety, needs of the defendant, and the seriousness of the defendant's crime.

What troubles me here is that the sentencing court has sentenced the defendant to a minimum term of 45 years without seeking a comprehensive study of the defendant's individual characteristics, circumstances, needs, and potentialities. It may well be that after a comprehensive presentence report or report from the Kansas Reception and Diagnostic Center is obtained, a minimum sentence of 45 years would be appropriate in this case. However, judicial discretion in sentencing cannot be exercised in a vacuum of facts as was done by the trial court here. I would reverse this case and remand it to the district court for a reconsideration of the sentence and require that sentence be imposed only after complete and full information about this defendant is obtained either through a presentence report or by a report from the Kansas Reception and Diagnostic Center.