No. 48,309

STATE OF KANSAS, *Appellee*, v. LOUIS HERALD JAKEWAY, *Appellant*.

(558 P. 2d 113)

Opinion filed December 11, 1976.

J. *Stephen Nyswonger*, of Garden City, argued the cause and was on the brief for the appellant.

*Don Vsetecka*, county attorney, argued the cause, and *Curt T. Schneider*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Appellant, Louis Herald Jakeway, appeals from a conviction of felony theft (K. S. A. 21-3701). The theft consisted of taking a currency and coin collection, two rings and other items from the place of business of Lawrence Deaver in Garden City, Kansas. Appellant is the former son-in-law of Deaver. The facts in evidence will be developed as we consider the respective specifications of error raised by appellant Jakeway.

Appellant contends that his conviction should be reversed because he was not formally arraigned as required by K. S. A. 22-3205. When the appellant and his attorney appeared before the district court on April 15, 1975, the court was advised that a copy of the information had been delivered to appellant. However, appellant's attorney requested and was granted a continuance to prepare for argument on a motion to suppress evidence. The arraignment and the motion to suppress were set for May 30. Later, this setting was postponed to June 25, at the request of defendant's counsel. On that date the motion to suppress was heard and overruled and a jury trial date was set for August 18 and later continued to September 16. The appellant took part in the trial proceedings which began on that date and no objection was lodged because of the lack of formal arraignment until after the verdict was entered. Apparently arraignment had been overlooked by the county attorney and the trial court proceeded with the trial as if a plea of not guilty had been formally entered.

The absence of a formal arraignment and plea of the defendant is effectively waived by the acts of the defendant in going to trial without objection and submitting the question of his guilt to the jury impaneled to try him, contesting every question in the case as fully as if there had been a formal arraignment, and not raising any objection as to the nonobservance of the formality until the

verdict of the jury is returned. (*State v. Trams,* 189 Kan. 393, Syl. 3, 369 P. 2d 223; *In re Bundy,* 144 Kan. 64, 58 P. 2d 80; *State v. Cruse,* 112 Kan. 486, 212 Pac. 81; *State v. Stitz,* 111 Kan. 275, 206 Pac. 910.) The requirement of arraignment and plea was effectively waived by appellant in this case.

Appellant challenges the order of the trial court overruling the motion to suppress allegedly illegally seized evidence. Because of the different circumstances giving rise to this claim we must consider the question of the admissibility of certain keys separately from the question of admissibility of a box and its contents. We first consider the admissibility of the box and its contents.

A warrant for the arrest of appellant had been issued on an entirely separate and distinct charge which concerned a burglary of the Pappas Concrete Company. The Finney County officers proceeded to the mobile home of a Mr. Palacio, where appellant had been staying, but appellant was not there. They did talk to both Mr. Palacio and to a Mr. Besel at that time. Both were advised of the purpose of the official visit. Later that evening Mr. Besel called the officers and they returned to the mobile home of Mr. Besel, which was next door to Mr. Palacio's mobile home. Mr. Besel gave the officers a steel box which he said had been given to him by Mr. Jakeway for safekeeping. Mr. Besel stated he did not know what was in the box but he had kept it in his mobile home.

The officers noted the box was locked and they remembered seeing a ring of keys in one of the rooms in the mobile home of Mr. Palacio. On previous inquiry they had learned the room was being used by Mr. Jakeway. At the request of the officers, Mr. Palacio let them into his mobile home and the officers obtained the keys which opened the box. The box contained a pistol, 24 $1.00 bills, 15 $2.00 bills, 2 $5.00 bills, a $10.00 bill, a coin collection, two rings and other items. The currency, coin collection and the rings were later identified by Lawrence Deaver as belonging to him and his wife and were the basis for the felony theft charge presently before this court.

During the trial Jakeway testified that he had never previously seen either the box or the contents, that he had not given them to Besel for safekeeping and that he had never owned or possessed them.

One who seeks to challenge the legality of a search as a basis for suppressing relevant evidence must claim either to have a proprietary or possessory interest in the premises searched, or to have

owned or possessed the seized property. (*State v. Boster,* 217 Kan. 618, 539 P. 2d 294; *State v. Sumner,* 210 Kan. 802, 504 P. 2d 239; *Brown v. United States,* 411 U. S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565.)

The box and its contents were in the possession of Mr. Besel prior to the time they were delivered to the police. No premises were searched to obtain this property and Jakeway denied that he owned or possessed the seized property. Therefore it is clear that Jakeway was not the victim of an invasion of privacy when the police obtained the box and its contents and he had no standing to challenge the admissibility of this evidence. The trial court properly overruled the motion to suppress these items.

We now direct our attention to the keys. Appellant denied owning or possessing these keys yet they were obtained by the police inside Mr. Palacio's mobile home from a night stand in a room being used by appellant. He did have a proprietary or possessory interest in the room from which the keys were taken.

At the outset it should be noted that only unreasonable searches and seizures are prohibited but unreasonableness cannot be stated in rigid and absolute terms. (*Harris v. United States,* 331 U. S. 145, 91 L. Ed. 1399, 67 S. Ct. 1098; *State v. Boyle,* 207 Kan. 833, Syl. 3, 486 P. 2d 849.) All searches without a valid warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid search warrant. (*Stoner v. California,* 376 U. S. 483, 11 L. Ed. 2d 856, 84 S. Ct. 889, reh. den. 377 U. S. 940, 12 L. Ed. 2d 303, 84 S. Ct. 1330.) One of the exceptions to the requirement of a search warrant is a search made with consent or waiver voluntarily, intelligently and knowingly given. (*State v. Boyle,* supra; see also Anno: Search and Seizure—Consent, 31 A. L. R. 2d, § 3, p. 1081.)

Where two persons jointly occupy living quarters, the consent of one of them may be sufficient to form the basis for a valid search. (*State v. Boyle,* supra; *White v. United States,* 444 F. 2d 724 [10th Cir. 1971].)

In *State v. Boyd,* 206 Kan. 597, 481 P. 2d 1015, cert. den. 405 U. S. 927, 30 L. Ed. 2d 800, 92 S. Ct. 977, McCarty and Boyd occupied living quarters above a Topeka tavern. McCarty gave his consent to search the premises. It is held McCarty's consent was sufficient to form the basis for a valid search.

In *State v. Stein,* 203 Kan. 638, 456 P. 2d 1, cert. den. 397 U. S. 947, 25 L. Ed. 2d 128, 90 S. Ct. 966, we hold a high school principal

having custody and control of school lockers and having access thereto, and possessing a master list of all lock combinations and a key which will open every locker, is empowered to open and search the same for contraband upon the request of officers.

Now let us turn to the facts of the present case. Mr. Palacio was the owner and lived in the mobile home from which the keys were taken. The record does not indicate that he was in the business of renting rooms in his mobile home. Mr. Palacio and Mr. Jakeway were mutual friends and acquaintances. Mr. Palacio had obtained a divorce and lived alone until September 1974. Mr. Jakeway, pending divorce proceedings, moved from his home to Mr. Palacio's mobile home in September 1974. Jakeway moved his belongings into the bedroom where the keys were found. He used other rooms in the mobile home and had stored some clothes in another room. He remained until January 1975, so his occupancy was temporary. At the time of the trial he had returned to live with his former wife. There was testimony by Mr. Palacio that during these four months Mr. Palacio had never entered the room in which Mr. Jakeway slept except when he permitted the officers to pick up the keys. He further testified Mr. Jakeway did pay some rent for use and occupancy of the room and the mobile home. Mr. Palacio testified that he alone had a key to the mobile home. From these facts it would appear that the arrangement was temporary and between mutual acquaintances. There is no question that Mr. Palacio intelligently and knowingly gave his consent for the officers to enter the premises to pick up the keys.

The existence and voluntariness of a consent to search and seizure is a question of fact to be decided in light of attendant circumstances by the trier of facts and will not be overturned on appeal unless clearly erroneous. (*State v. Boyle*, supra; *State v. Stein*, supra; *White v. United States*, supra.) The trial judge noted that the arrangement for occupancy was between friends and of a temporary nature. Mr. Palacio was the owner in charge of the premises and had the only key to the mobile home. The officers were aware of the location of the keys by reason of their previous entry to execute the arrest warrant. They had been given the box by Mr. Besel and could have opened the same by force without the keys. It seems reasonable under the circumstances that the officers should obtain permission from Mr. Palacio to get the keys rather than damage the box. Their search was limited to entering the

room and picking up the keys from the night stand in one of the rooms where appellant had his belongings.

We cannot say that the trial court's order was clearly erroneous on the basis of the evidence at the trial. The order was proper since it was based upon a finding that the search and seizure was a consensual search of jointly occupied premises by one having authority.

Appellant's next point is that the state failed to establish the value of the items taken. Among the items taken and introduced in evidence were 42 silver certificates issued by the United States Government. This currency alone had a face value of $74.00. Judicial notice may be taken of the value of the currency and coin issued by the United States Government and proof of its value is unnecessary. (*State v. Pigg*, 80 Kan. 481, 103 Pac. 121.)

In addition appellant contends there was no evidence to establish that the money introduced in evidence was that taken from the place of business of Mr. Deaver. Mr. Deaver testified that he and his wife habitually saved silver coin and silver certificates received by them in the business. These were kept in a box below the counter in the store. Not only did he testify that the currency taken from the box looked like that he had accumulated but he was able to positively identify two of the bills. One was a $2.00 bill which had the name "Mrs. John Dohogne" written on the face of it. The other was a $1.00 bill similarly marked with the word "Hawaii."

In order to sufficiently identify money to make it admissible as relevant evidence, it is not necessary that the witness identify each bill or coin separately; it is generally sufficient if the witness testifies it appears to be the same money alleged to have been stolen after considering its amount, denominations, packaging and general appearance. (*State v. Watkins*, 219 Kan. 81, 547 P. 2d 810; *State v. Baker*, 219 Kan. 854, 549 P. 2d 911.) The lack of positive identification of money as the same money alleged to have been stolen goes to its weight as evidence and not its admissibility. (*State v. Ridge*, 216 Kan. 73, 530 P. 2d 1213; see also *State v. Oswald*, 197 Kan. 251, 417 P. 2d 261.)

The admissibility of physical evidence is a matter resting within the sound discretion of the trial court and is to be determined by the court on the basis of the relevancy of the evidence and its connection with the accused and the crime charged. (*State v. Beard*, 220 Kan. 580, 552 P. 2d 900.)

There is sufficient evidence of identification here and the currency, coin and other items were properly admitted in evidence.

The next point raised relates to juror misconduct. Appellant complained when the complaining witness, Deaver, was seen conversing with a juror during a recess. Both Deaver and the juror were called into the chambers of the trial judge and questioned. They testified they knew each other by sight, they did not discuss the pending case and they merely exchanged comments about the juror's business of hauling hay. The juror asked Deaver why he was in the courthouse and he replied that he was a witness in a case.

Whether a specific instance of juror conduct falling within the broad statutory grounds defined in K. S. A. 22-3423 (c) requires a declaration of mistrial is a matter of discretion with the trial court. (State v. Culbertson, 214 Kan. 884, 522 P. 2d 391; State v. Finley, 208 Kan. 49, 490 P. 2d 630.) Jury misconduct will not constitute a ground for reversal unless it is shown to have substantially prejudiced the rights of either the defendant or the prosecution. (K. S. A. 22-3423 [c]; State v. Collins, 215 Kan. 789, 528 P. 2d 1221; State v. Arney, 218 Kan. 369, 544 P. 2d 334.)

In determining whether a particular instance of improper communication between a juror and a witness amounts to prejudicial misconduct which will prevent a fair trial the nature of the communication is of considerable significance. When the communication is entirely unrelated to defendant's case courts generally find insufficient prejudice to require a mistrial. (State v. Culbertson, supra; see also Anno., Jurors—Communications With Witnesses, 9 A. L. R. 3d, § 9, p. 1289.) When the communication is related to the defendant's case the trial court may find prejudice and then a mistrial will be declared. (State v. Finley, supra; see also Anno., Jurors—Communications With Witnesses, 9 A. L. R. 3d, § 10, p. 1294.)

In the present case the matter was explored by the trial court and no prejudice was found. No abuse of judicial discretion appears in the record before us. (See State v. Rhodes, 219 Kan. 281, 283, 546 P. 2d 1396.)

Appellant's remaining points concern the trial court's refusal to direct a verdict in his favor and to grant a new trial. These points are based upon those matters specifically covered in the preceding points and are without merit.

The judgment on conviction is affirmed.