NOT DESIGNATED FOR PUBLICATION

No. 117,086

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT M. DENOMME,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed January 12, 2018.
Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Barry K. Disney*, senior deputy county attorney of Riley County, *Richard E. James*, county
attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., PIERRON, J., and BURGESS, S.J.

PER CURIAM: After a jury convicted him on several charges, Robert M. Denomme
filed a motion for new trial based on ineffective assistance of counsel. One of his
allegations was that his trial counsel had failed to inform the court of juror misconduct.
The district court denied his motion, and he appealed. The Court of Appeals remanded
his case for an evidentiary hearing on this issue. *State v. Denomme*, No. 113,941, 2016
WL 3031252 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. ___ (June
20, 2017). After the remand hearing, the district court ruled that Denomme's counsel was

1

not deficient for failing to inform the court about the juror misconduct, and Denomme had failed to establish prejudice. Denomme appeals. We affirm.

In August, 2014, a jury convicted Denomme of attempted criminal use of a financial card, a class B nonperson misdemeanor; attempted misdemeanor theft, a class B nonperson misdemeanor; and identity theft, a severity level 8 nonperson felony. The district court sentenced him to 18 months' probation, with an underlying sentence of 14 months' incarceration. The following facts are taken from Denomme's direct appeal:

"Denomme's jury trial was held on August 8, 2014. At his trial, the State presented evidence Denomme stole Anna Lippe's purse containing Lippe's Cabela's VISA credit card. The State alleged Denomme used Lippe's credit card in three separate transactions. Lippe testified she had lost her purse on July 1, 2013, and immediately reported it missing to Officer Steve Squires. Officer Squires called Lippe into the police station the next day because a man had found her purse in a lot behind a local automotive store. Lippe explained although many items were still inside her purse, her credit card was missing.

"Upon reviewing charges made on her credit card account, Lippe saw three unauthorized transactions. Two of the unauthorized charges occurred on July 2, 2013. Both of these charges occurred back to back, and the charges were made at a gas station located in Clay Center, Kansas. The first charge was in the amount of $80.02, the second charge was in the amount of $45.39, and the remaining unauthorized charge occurred on July 3, 2013. Lippe explained somebody attempted to use her credit card to purchase minutes for a Straight Talk wireless cell phone. Because Lippe had already cancelled her credit card the purchase was declined. Lippe stated she told Officer Squires about the unauthorized use of her credit card.

"Officer Squires testified after Lippe told him someone had tried to purchase minutes to add onto a cell phone using her credit card, he sought and obtained a subpoena for the name, account number, and phone number associated with the cell phone. TracFone Wireless, Inc., a subsidiary of Straight Talk, complied with the subpoena, revealing that Lippe's credit card was used in an attempt to purchase $50.12 worth of minutes for a cell phone number belonging to Denomme. Officer Squires testified he was

2

familiar with Denomme because he had previously lived in Clay Center. The officer further testified there were no surveillance videos available from the gas station where the first two unauthorized credit card charges were made.

"The State additionally submitted a printout of Lippe's credit card statement, the subpoena, and TracFone's response to the subpoena into evidence.

"Denomme testified on his own behalf. He admitted the phone number at issue was his but denied any involvement in the theft of Lippe's credit card. Denomme admitted a bank statement into evidence showing he had paid Straight Talk $49.92 on July 5, 2013. Denomme asserted because he paid his Straight Talk bill of $49.92 on July 5, 2013, it made no sense why he would attempt to pay $50.12 on July 3, 2013. Additionally, Denomme testified his cell phone plan had unlimited minutes.

"The jury ultimately acquitted Denomme of the criminal use of a financial card and theft counts associated with the use of Lippe's credit card at the gas station on July 2, 2013. The jury found Denomme guilty of the attempted criminal use of a financial card and attempted misdemeanor theft counts associated with the use of Lippe's credit card in the attempted purchase of cell phone minutes on July 3, 2013. The jury also found Denomme guilty of identity theft.

"More than 1 month after his convictions, on September 24, 2014, Denomme filed a pro se motion for new trial. In his motion, Denomme alleged his trial counsel, Phylemon Yau, was ineffective because Yau: (1) failed to effectively communicate with him; (2) failed to call certain witnesses; (3) failed to subpoena other witnesses; and (4) failed to investigate the charges. Denomme was appointed new counsel. Denomme's new counsel filed an amended motion for new trial on January 20, 2015. In this motion, Denomme reiterated his previous arguments but also alleged Yau failed to inform the trial court about inappropriate contact that occurred between Officer Squires and members of the jury during his trial. Denomme's new counsel also moved for judgment of acquittal, alleging insufficient evidence.

"The trial court held a hearing on Denomme's motions on January 22, 2015. Denomme and his friend, Margie Jo Clark, both testified they saw Officer Squires speak to members of the jury during a break at his trial. Denomme further testified he saw Yau's investigator, Kimberly [Teesdale], speak with the jury during his trial. Denomme testified he did not know what was discussed between the jury and Officer Squires or between the jury and [Teesdale], but Denomme explained when he told Yau about this, Yau refused to inform the trial court. Denomme testified Yau told him to "just keep it simple, I got this

3

under control" and "just keep your mouth shut and be quiet and I'll take care of everything." After hearing this testimony, the trial court denied both of Denomme's motions. The trial court denied Denomme's motion for judgment of acquittal because sufficient evidence supported his convictions. Citing *State v. Holt*, 298 Kan. 469, 476, 313 P.3d 826 (2013), the trial court denied Denomme's motion for new trial because it was not timely filed and did not allege new evidence." 2016 WL 3031252, at *1-2.

Denomme appealed his convictions as well as the district court's denial of his motion for new trial. The *Denomme* court affirmed his convictions, finding his complaint was not fatally defective and sufficient evidence supported his convictions. 2016 WL 3031252, at *3-7. The court found the district court erred in denying Denomme's motion for new trial as untimely, because district courts have jurisdiction to hear claims of ineffective assistance of counsel raised in untimely motions for new trial based on *State v. Reed*, 302 Kan. 227, Syl. ¶ 1, 352 P.3d 530, *cert. denied*, 136 S. Ct. 344 (2015). However, the court also found that the record conclusively showed Denomme was not entitled to relief on most of his claims of ineffective assistance of counsel. 2016 WL 3031252, at *9-10. As for Denomme's claim that Yau had failed to inform the district court about possible juror misconduct, the court found the issue must be remanded for an evidentiary hearing. 2016 WL 3031252, at *10-11.

The district court held a remand hearing on October 6, 2016. Officer Squires testified that he was sitting outside the courtroom's doors talking to Teesdale during a break when a female juror waved at him from 15 to 20 feet away. He did not remember who the juror was. According to Officer Squires, the juror also said something to him, but he could not recall what she said. Officer Squires stated he knew not to speak with any of the jurors, so he just nodded his head and waved back. He could not remember if the jury had been sworn in or not at the time.

Officer Squires did not report the incident because he did not feel it was relevant. He testified that if he had spoken with any of the jurors, he would have said something to

4

the prosecutor. Officer Squires denied having any other conversations or interactions with any of the jurors.

Teesdale testified she did not interact with any of the jurors that day. She told the court she never interacts with jurors other than to return basic greetings.

Teesdale stated that she was present when Officer Squires spoke with one of the jurors. She recalled that Officer Squires was sitting outside the courtroom door, and the jurors were lined up to enter the courtroom. One of the jurors stepped out of line and said "Hey" to him. Officer Squires turned around, and the juror said, "I didn't know that was you." The juror then asked him if he knew that a mutual acquaintance was in town. Officer Squires responded that he did not and that he would check into it. According to Teesdale, the entire conversation lasted less than one minute. She did not see any other conversations between Officer Squires and that particular juror or any other juror that day.

Teesdale testified that she told Yau about the interaction. She said that Denomme was upset about Officer Squires speaking with jurors on the day of the trial. She told the court that neither Denomme nor Clark were present when Officer Squires had the interaction with the female juror. She admitted that presumably Denomme might have seen something else that upset him.

Yau testified that Denomme had told him that Officer Squires had contact with the jury. Teesdale also told him the same thing. Yau did not tell the court because he felt nothing inappropriate had happened, though he admitted that Denomme had wanted him to raise the issue.

Denomme testified he saw Officer Squires having conversations with jurors after the jury had been selected and on several breaks during the trial. He could not hear what

5

they were talking about. Denomme said he told Yau about the conversations, but Yau told him the trial was going well and he should not worry about things like that. Denomme testified he saw Teesdale speaking to a woman he believed to be a juror. This upset him because he thought Teesdale might be a witness at his trial.

Clark testified she saw Officer Squires talking to jurors next to the coffee area provided by the court. She believed the conversation lasted for about five minutes because she left to go the restroom, and when she came back about five minutes later they were still talking. She could not hear what they were saying.

Clark stated she saw Teesdale talking to some of the jurors. She told Denomme about what she had seen, and Denomme said he was going to talk to Yau about it. Clark spoke with Teesdale about the conversations, but Teesdale told her not to worry about it because it was not about the trial.

In its ruling from the bench, the district court found that there was only one interaction between Officer Squires and a juror. It held that the interaction constituted jury misconduct but Yau was not deficient for failing to inform the trial court. The court acknowledged, however, that another court might disagree with its conclusion that Yau was not deficient. Therefore, the court held that Denomme had failed to demonstrate prejudice because there was no evidence that the jurors or witnesses had discussed the case. The court reiterated its findings in a written order. Denomme appeals.

A defendant's claim of ineffective assistance of counsel presents mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims, we determine whether substantial competent evidence supports the district court's factual findings and whether those factual findings support the court's legal conclusions. We apply a de novo standard to the district court's legal conclusions. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

6

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the result of the proceeding would have been different absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]).

The State concedes that Yau provided deficient performance when he failed to inform the district court about Officer Squires' contact with the jury. This is consistent with Denomme's direct appeal. The *Denomme* court concluded "if Yau failed to inform the trial court about the alleged improper communications, as Denomme asserts, he unquestionably provided deficient performance that may have resulted in prejudice." 2016 WL 3031252, at *10. Thus, Denomme has met the first prong of the *Strickland* test for ineffective assistance.

The main point of contention between the parties is whether Yau's actions, or his failure to act, prejudiced Denomme. In order for Denomme to succeed on his ineffective assistance claim, he must show that the outcome of his trial would have been different if not for Yau's deficient performance. Here, Denomme must show there is a reasonable probability the district court would have declared a mistrial due to jury misconduct. He is unable to do this, though, because the record does not show that the jury misconduct substantially prejudiced his rights.

Communication between a juror and a witness is not a ground for reversal unless the defendant can show the communication substantially prejudiced his or her rights. *State v. Hobbs*, 276 Kan. 44, 49, 71 P.3d 1140, 1145 (2003), *disapproved on other grounds by State v. Schow*, 287 Kan. 529, 197 P.3d 825 (2008). "The substance of the

7

communication is important and more likely to be prejudicial to the defendant if it relates to the case." *State v. Macomber*, 244 Kan. 396, 407, 769 P.2d 621, 629 (1989), *rejected on other grounds by State v. Rinck*, 260 Kan. 634, 923 P.3d 67 (1996). "When the communication is entirely unrelated to defendant's case courts generally find insufficient prejudice to require a mistrial." *State v. Jakeway*, 221 Kan. 142, 148, 558 P.2d 113 (1976). Denomme bears the burden to prove any jury misconduct substantially prejudiced his rights. *Macomber*, 244 Kan. at 407.

In its ruling here, the district court found there was only one interaction between Officer Squires and a juror and this was the only instance of juror misconduct. The court also held the content of the interaction was not related to Denomme's case. Substantial competent evidence supports this finding as both Officer Squires and Teesdale testified Officer Squires only spoke once with one juror. They also both testified the conversation was brief, and Teesdale testified the content of the conversation was unrelated to Denomme's trial.

Based on this single interaction, it is not clear how Denomme's rights would have been substantially prejudiced. For example, in *Hobbs*, a juror approached a testifying officer during a break in the trial and asked him how he was able to carry all his equipment. The officer responded that he used a truck with a motor home attachment. The defendant moved for a mistrial. After hearing testimony from the officer, the district court denied the motion. The *Hobbs* court affirmed the district court, finding "it was an innocent contact on a topic unrelated to the prosecution." 276 Kan. at 49. Similarly, Officer Squires' interaction with the juror was an innocent contact on a topic unrelated to Denomme's case.

Denomme contests the district court's finding that only one interaction occurred between Officer Squires and the jury. He argues the district court ignored other evidence presented at the remand hearing. Specifically, he points to Clark's testimony that Officer

8

Squires and Teesdale engaged in conversations with multiple jurors. Under the substantial competent evidence standard, however, we "do not consider other evidence that might support a different result as long as sufficient evidence supports the district court's decision." *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 414, 233 P.3d 286 (2010).

More telling, as the State points out, Clark's testimony was not uncontroverted—both Officer Squires and Teesdale testified that only one conversation happened. Denomme is essentially asking us to reweigh the testimony presented at the remand hearing. We do not reweigh evidence, determine the credibility of witnesses, or resolve conflicts in evidence. *State v. Cosby*, 285 Kan. 230, 240, 169 P.3d 1128 (2007).

Even if we were to consider Clark's testimony, though, it would not necessarily help Denomme. While both Denomme and Clark testified they saw Officer Squires and Teesdale talking to jurors, neither one of them heard the content of those conversations. Without this critical information, Denomme has a difficult time demonstrating how these interactions prejudiced his rights.

Another important consideration when analyzing juror misconduct is whether the juror thinks he or she can be impartial. *State v. Turner*, 2 Kan. App. 2d 645, 647, 586 P.2d 279 (1978). In this case, the record suggests the juror was familiar with Officer Squires. Denomme has not presented any evidence indicating the juror could not be impartial. As Denomme carries the burden of proof, he has failed to establish prejudice due to possible juror bias.

Denomme attempts to argue instead that he suffered prejudice because it is now much harder for him to investigate any possible jury misconduct. He contends that if Yau had brought the matter to the district court's attention at the time of the trial, the court could have immediately interviewed the jurors to determine the content of the alleged

9

conversations. According to Denomme, it became more difficult to get statements from jurors at the time of the motion for a new trial, and even more difficult at the remand hearing, which was held more than two years after the trial. Denomme asserts that "[d]uring this delay of more than two years memories of the events could have faded, the identities of the persons involved could have been lost, and the jurors could have left the area or died."

While it may have been easier for the district court to investigate the matter at the time of trial, Denomme has still failed to establish that the outcome of his trial would have been any different. Based on the testimony of Officer Squires and Teesdale, any contact between Officer Squires and the jury was brief and involved content unrelated to the trial. Denomme has not provided any evidence to suggest that Officer Squires and Teesdale were discussing matters related to his case with jurors. See, e.g., *State v. Overton*, 279 Kan. 547, 253, 112 P.3d 244 (2005) (noting defendant should have included affidavits from jurors in motion for new trial based on juror misconduct). Denomme has not even provided any evidence that he attempted to interview jurors regarding this matter but was unable to do so. His allegations that jurors may have moved, died, or forgotten the events surrounding the trial are entirely speculative.

Alternatively, Denomme argues the district court erroneously found that Yau's performance was not deficient. Denomme notes the *Denomme* court found that Yau was "unquestionably" deficient if he had failed to tell the district court about juror misconduct. 2016 WL 3031252, at *10. Therefore, Denomme argues, the district court was incorrect to find that Yau made the right decision not to inform the district court, and his case should be remanded for another hearing.

Supposing the district court did err in finding Yau's performance was not deficient, though, another remand is not necessary because the district court also found that Denomme had failed to establish prejudice. As already discussed, the district court was

10

correct to conclude so. Additionally, we can uphold the district court as right for the wrong reasons. *State v. Prine*, 297 Kan. 460, 481, 303 P.3d 662 (2013). Even if the district court erroneously concluded Yau's performance was not deficient, it was right to deny the motion for a new trial based on ineffective assistance of counsel because Denomme had not established prejudice.

Finally, Denomme argues that the district court did not consider the totality of the evidence in reaching its conclusion and, thus, the court denied him a full evidentiary hearing. He points out that the court did not mention Clark's testimony in its ruling. From this, he draws the conclusion that the court did not consider her testimony. By failing to consider her testimony, he reasons, the court in effect denied him a full evidentiary hearing.

Denomme has not presented any authority to support his argument that a district court's failure to mention certain evidence is the equivalent of denying a party a full evidentiary hearing. As the State notes, the record shows Denomme had a full evidentiary hearing. He called five witnesses, and the record does not show that the court denied him the opportunity to put on other witnesses or introduce other evidence.

To the extent Denomme is arguing the district court made inadequate findings, this argument fails as well. Under Supreme Court Rule 165 (2017 Kan. S. Ct. R. 214), the district court has a duty to provide adequate findings of fact and conclusions on the record to explain its decisions on contested matters. Here, the district court found that only one conversation occurred between Officer Squires and a juror, which supports its finding that Denomme was not prejudiced. Denomme does not cite to any authority suggesting a district court must make findings as to all evidence presented during a hearing.

11

Furthermore, a party must object to inadequate findings of fact and conclusions of law to preserve an issue for appeal. *State v. Herbel*, 296 Kan. 1101, 1118-19, 299 P.3d 292 (2013). When no objection is made to a district court's inadequate findings of fact or conclusions of law, an appellate court can presume the district court found all facts necessary to support its judgment. *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015). Because Denomme did not object, we presume the district court found Clark's testimony was not credible.

While Yau may have been deficient for failing to inform the district court of juror misconduct, Denomme has not sustained his burden to demonstrate that Yau's performance prejudiced him. Therefore, his claim of ineffective assistance fails.

Affirmed.